## WIESTER v. WIESTER.*

### S. F. No. 552; May 29, 1897.

#### 48 Pac. 1086.

**Partnership—Good Faith in Dissolution and Liquidation.—** Under Civil Code, sections 2410, 2411, partners are bound to act in the highest good faith toward each other, and this continues and extends to the dissolution and liquidation of the partnership affairs.

**Partnership—Fraud in Settlement of Affairs.—**Where, on settlement of a partnership, the withdrawing partner accepted certain land in payment of his interest at $70 per acre, the deed will not be set aside, on the ground of fraud in the settlement, where it was evident that both parties believed the land to be of such value, that it was located at a distance, at a town in which there was at the time a "land boom," and similar property was then selling at from $100 to $150 per acre.

APPEAL from Superior Court, City and County of San Francisco; James M. Troutt, Judge.

Action by William C. Wiester against William H. Wiester. Judgment for defendant and plaintiff appealed. Affirmed.

G. R. Lukens (H. A. Melvin of counsel) for appellant; Denson & De Haven for respondent.

SEARLS, C.—This is an action to obtain a decree annulling a deed of conveyance by defendant to plaintiff of the undivided one-sixth interest in and to about four hundred and eighty acres of land situate in the county of Pacific, state of Washington; to have it determined that plaintiff has an interest in the firm of Wiester & Co., which on August 1, 1890, was of the value of $7,000; that defendant be decreed to have received said interest in said firm under a trust for the use and benefit of plaintiff; that defendant be held to account therefor, etc. The cause was tried by the court without a jury. Written findings were filed, upon which judgment was entered in favor of the defendant. Plaintiff appeals from the judgment and from an order denying his motion for a new trial.

*Rehearing denied.

The findings are too lengthy to be set out in full. The following will convey an idea of their drift: On the 1st of August, 1890, and for some four years prior thereto, plaintiff and defendant were partners in business in San Francisco; the former owning one-fourth and the latter, who was his uncle, three-fourths interest in the business. Plaintiff was in bad health, and wished to retire from the business. He asked his uncle, the defendant, to buy him out. The latter wished to retain plaintiff in the business, but finally consented, and they determined that plaintiff's interest was of the value of $7,000. Defendant had no ready money to pay, but had the note of plaintiff for $1,600, given when plaintiff bought into the business, and owned four hundred and seventy-nine and two-fifths acres of land near South Bend, county of Pacific, now in the state of Washington, which cost him $2,000 some five or six years previously. Neither party had ever seen the land, and all their information in regard to it came from telegrams and letters from other persons. A "land boom" was on at South Bend, a railroad and other improvements were in course of construction, and land values were rapidly enhancing. Defendant believed, from newspapers, letters, etc., that his land was worth from $70 to $100 per acre, and that he could in a short time sell it for the latter figure. Plaintiff, who knew as much of its value and prospects as defendant, proposed taking an interest in the land in payment for the remainder of his interest in the store after deducting the amount of the note. The parties agreed to this, and plaintiff accepted an undivided one-sixth interest in said land in full payment of the balance due him, and received a deed therefor. In this deal the land was reckoned at $70 per acre. The court finds that the land was at that time of the value of $50 per acre, and is now of the value of $10 per acre. At and prior to this transaction the parties were on very intimate terms of mutual friendship, confidence and respect, which conditions existed up to about the time of the commencement of this suit. Defendant took no advantage of plaintiff by reason of their relationship or business or terms of friendship in the said transaction, and "did not make any false or fraudulent representations whatever to the plaintiff concerning the said land, or the character, location, situation, condition or value thereof, and the said transaction was made

without any deceit or fraud, and without any intent on the part of the defendant to cheat, wrong, deceive or defraud the plaintiff,'' nor was he fraudulently prevailed ·upon to dispose of his interest in the partnership business by any false or fraudulent representations, etc., ''and it is not true that he (plaintiff) has been imposed upon nor fraudulently prevailed upon by any false or fraudulent representations whatever.''

Appellant objects to the sufficiency of the evidence to support each of the more important facts as found by the court. The form of the objection, in every case except one, is that ''there is no evidence that,'' etc., followed by the substance of the finding. The exception is where plaintiff avers that ''there is no evidence sufficient to produce conviction that the value of the said lands in suit at the time of the said transaction was $50 per acre.'' The position assumed by the learned counsel for appellant is: (1) Plaintiff and defendant were blood relations, between whom the most intimate and confidential relations existed. (2) They were partners, and, under sections 2410 and 2411 of the Civil Code, they were trustees for each other, and bound to act in the highest good faith toward each other, and not to obtain any advantage in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind, and that this status continued and extended to the dissolution and liquidation of the partnership affairs. (3) That, as the evidence is largely documentary, being contained in the depositions of witnesses, the opportunities of this court to judge of its value are as good as those of the court below, and hence that the general doctrine that we will not interfere in a case of substantial conflict of evidence has no application.

We have perused the evidence in the light of these confidential relations between the parties, and from that standpoint find nothing to warrant a reversal of the judgment. If defendant became liable to plaintiff at all, it was for representing the value of the land at $80 per acre at the time of the sale, either knowing it to be less or not knowing it to be worth as much as that sum. We think the evidence was sufficient to warrant the court in finding, not only that the defendant believed his statement as to the value of the land, but that it was literally true at the time.

Upon the first branch of the proposition the evidence shows that defendant had a brother in law named Dennis, who was in the employ of the Northern Pacific Railroad, and located at Tacoma or in that region. About April 18, 1890, Dennis wrote to defendant, for a would-be purchaser of defendant's land, offering $12 to $20 per acre therefor, if properly located and valuable for agriculture, etc. Dennis accompanied this letter with another, in which he stated he had private information to the effect that a railroad was to reach the coast in that vicinity, a town to be built, boomed, etc.; that defendant's land was worth $60 per acre; and, among other things, said: "But if I cannot sell your South Bend tract for $60, my name is not Dennis," and "This much I feel confident of, that I can sell it for $50 per acre within sixty days." He advises defendant "to hold it, even if you could get $60 per acre." About April 25th Dennis telegraphed defendant from Tacoma: "Don't sell any price until hear from me. North tract worth half a million if located right." In May, 1890, defendant requested a traveling salesman of his firm, who was going north, to look after the land, and report to him. He telegraphed to defendant that the land was worth $200 per acre. There is nothing to indicate but that full confidence was placed in these reports by defendant.

As to the evidence of the value of the land on August 1, 1890, the date of the sale to plaintiff, there were the depositions of five witnesses, residents of the vicinity, and familiar with prices in 1890, who placed the value of the land at from $75 to $150 per acre. Some of these witnesses fortified their opinions of value by describing sales and offers made to purchase lands in the vicinity, but somewhat nearer to the new town, at prices greatly in excess of the value fixed by them on this land. On behalf of plaintiff some seven witnesses were offered, who generally fixed the value of the land at from $5 to $10 per acre; but it is quite apparent that most of them speak of the value in the present rather than in the past, and a number of them say, in substance, that all prices above those fixed by them were fictitious, related not to intrinsic value, were the effect of a boom, etc. One of them, the manager of a large lumber company, owning large tracts of land, did say: "I consid-

44

ered all property unimproved in South Bend worthless at that time, and do so consider it now, as the town has three sets of bonds on it, and would have more if anybody would take them.'' The same witness, however, admitted that his company in 1891 sold forty acres of land adjoining the town for $15,000, one-third cash, balance in one or two years. He added that the balance was never paid. In 1890, ninety-eight acres in the section adjoining the land of defendant was sold for $10,000, half cash, balance in two years, etc.

Under this state of the evidence, the court would have been, as we think, warranted in finding a higher value of the land than that fixed. Conceding that, in a case like the present, where the testimony as to the value of the land is largely contained in the written depositions of witnesses, we are in as good a position to pass upon its weight and character as the court below, and we still think the findings, and each of them, are correct, and supported by the weight of evidence. There are no errors of law calling for reversal or requiring comment. We recommend that the judgment and order appealed from be affirmed.

We concur: Chipman, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.